IN UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| SACKDA SERMSAP, | ) |
|     Plaintiff, | ) ) ) |
| v. | ) CASE NO. 2:05-cv-1025-F ) ) |
| CITY OF MONTGOMERY, et al., | ) ) |
|     Defendants. | ) |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

Defendants, City of Montgomery, David Hatcher, Noah Johnson, William Manasco and Willie Peak, in support of their Motion for Summary Judgment state unto the Court the following:

**I.**

**SUMMARY JUDGMENT STANDARD**

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, admissions on file, together with the affidavits, if any, which it believes demonstrates the absence of genuine issue of material fact.'" *Id.* at 323. The movant can

meet this burden by presenting evidence showing that there is no dispute of material fact, or by showing, or pointing out to, the district court that the non-moving party has failed to present evidence in support of some element of the case on which it bears the ultimate burden of proof. *Id.* at 322-324.

Once the non-moving party has met its burden, Rule 56(e) "requires the non-moving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324. To avoid summary judgment, the non-moving party "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986).

After the non-moving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Rule 56(c), FRCP. Similarly, the moving party is entitled to summary judgment if the non-moving party has failed to prove the elements of her case or there is the absence of evidence in the record to support a judgment for the non-moving party on the issue in question. *Fitzpatrick v. City of Atlanta,* 2 F. 3d 1112, 1115-16 (11th Cir. 1993).

Additionally, conclusory allegations cannot interpose genuine issues of material fact into the litigation so as to preclude entry of summary judgment. Fed.Rules Civ.Proc.Rule 56(c), 28 U.S.C.A. Specifically in the case of claims of discrimination, the Eleventh Circuit in *Young v. General Foods,* 840 F.2d 825 (11th Cir.1988) addressing conclusory allegations of discrimination to establish pretext held:

> "With regard to establishing pretext: A plaintiff, when

> faced with a motion for summary judgment, ... must respond sufficiently to any rebuttal by the defendant to create a genuine issue of material fact. Even where a prima facie case has been established but the defendant has rebutted with a proffer of legitimate, non-discriminatory reasons for the discharge, a genuine issue of material fact is not automatically presented.... [O]nce established a prima facie case creates a rebuttable presumption of discrimination; but this presumption alone does not create an inference that a material fact, sufficient to present a jury question, is in issue."

Because the plaintiff bears the burden of establishing pretext [for discrimination], [s]he must present 'significantly probative' evidence on the issue to avoid summary judgment." *Young v. General Foods,* 840 F.2d 825 (11th Cir.1988) (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317). "Conclusory allegations of discrimination, without more, are not sufficient to raise an inference of pretext or intentional discrimination where [a defendant] has offered extensive evidence of legitimate, nondiscriminatory reasons for its actions." *Id.* at 830.

## II.

### PROCEDURAL BACKGROUND

This lawsuit was filed on October 25, 2005 naming as Defendants, City of Montgomery, David Hatcher, Noah Johnson, William Manasco and Willie Peak. (*PL 1*, *Complaint*). Individual named Defendants, David Hatcher, Noah Johnson, William Manasco and Willie Peak were named by Plaintiff in their official capacities.

Plaintiff alleged in the Original Complaint one count of race discrimination in violation of Title VII of the Civil Rights Act of 1964. (*PL 1*, *Complaint*). On November 10, 2005, Plaintiff filed Motion for Leave to Amend and Amended Complaint. (*PL 2*, *Amended Complaint*). Plaintiff alleged in an Amended Complaint one count of discrimination based on national origin in violation Title of

VII of the Civil Rights Act of 1964. (*PL 2*, *Amended Complaint).* The Court granted Plaintiff's Motion to Amend on November 15, 2005.

Defendants filed an Answer with affirmative defenses to the Complaint on November 21, 2005. (*PL 3*, *Defendants Answer with Affirmative Defenses).* Defendants filed an Answer with affirmative defenses to the Amended Complaint on November 30, 2005. (*PL 4*, *Defendants Answer to Amended Complaint with Affirmative Defenses).*

### III.

#### NARRATIVE STATEMENT OF FACTS

Sackda Sermsap, an Asian male, is a Construction Equipment Operator II at the Landfill. Noah Johnson, a black male, was appointed as Superintendent of the Landfill in September 2002 *(DX 2, Affidavit of Barbara Montoya).* David Hatcher, a white male, was appointed as the Assistant Superintendent of the Landfill in September 2003. *(DX 2, Affidavit of Barbara Montoya)* William Manasco is a white male and the former City Engineer. The Landfill is a division of Technical Services under the supervision of the City Engineer. *(DX 1, Affidavit of William Manasco).* Willie Peak is a white male and the Mayor's Assistant. Peak was temporarily assigned to supervise the Landfill in the absence of a Solid Waste Superintendent. *(DX 1, Affidavit of Willam Manasco).*

The request to fill the position of Master Auto Mechanic was received by Personnel on October 7, 2004. *(DX 2, Affidavit of Barbara Montoya).* The position was closed for application on December 29, 2004. *(DX 2, Affidavit of Barbara Montoya).* At the time that the position was originally posted, the only name on the eligible register certified as qualified by Personnel was Kenneth Braswell. *(DX 2, Affidavit of Barbara Montoya).* William Manasco, former City Engineer, requested that the position be re-advertised. *(DX 1, Affidavit of William Manasco and DX 2,*

*Affidavit of Barbara Montoya).*

The position was reopened for applications on January 10, 2005 with a closing date of January 31, 2005. *(DX 2, Affidavit of Barbara Montoya).* Personnel received six (6) applications, five (5) were qualified and one (1) unqualified. *(DX 2, Affidavit of Barbara Montoya).*

Plaintiff applied and was qualified for the position along with four other applicants. A total of five qualified candidates were placed on the eligible register. *(DX 2, Affidavit of Barbara Montoya).* The top five candidates were certified to the appointing authority to be considered for appointment to the vacant position. *(DX 2, Affidavit of Barbara Montoya).*

The names on the list were Solomon Billups, Kenneth Braswell, Sackda Sermsap, Johnnie Shaner, Jr. and Warren B. Thomas. Mr. Thomas did not respond to a request to be interviewed and Mr. Braswell declined to be interviewed. *(DX 1, Affidavit of William Manasco).*

The applicants were interviewed by David Hatcher, Bill Manasco and Willie Peak. *(DX 1, Affidavit of William Manasco).* The three applicants were all asked the same nine questions. *(DX 1, Affidavit of William. Manasco).* Following the interview process, the committee unanimously selected black male, Solomon Billups, be appointed to the position of Master Auto Mechanic. This was based on the fact that Billups' responses specifically to question 6 regarding time required to remove and replace a track from a D-8 dozier; question 7 regarding ability to diagnose, take down and repair an engine and question 8 regarding the length of time to tear down and repair a D-8 engine indicated that his knowledge and experience in diesel repair were somewhat better than Mr. Sermsap or Mr. Shaner. Additionally, consideration was given to the performance and work history of Mr. Sermsap and Mr. Shaner. *(DX 1, Affidavit of William Manasco).*

Solomon Billups, a black male, was unanimously recommended to be hired as Master Auto

Mechanic. *(DX 1, Affidavit of William Manasco).* Solomon Billups appointment to Master Auto Mechanic was approved by the Mayor on April 12, 2005. *(DX 2, Affidavit of Barbara Montoya).*

Sackda Sermsap filed a charge and an amended charge with the EEOC in May 2005 alleging national origin and race discrimination in May 2005. *(DX 3, EEOC Notice of Charge of Discrimination).* The Dismissal and Notices of Rights was sent by the EEOC on July 29, 2005. *(DX 4, EEOC Dismissal and Notice of Charge of Rights).*

## IV.

### ARGUMENT

A. *INDIVIDUAL NAMED DEFENDANTS*

Individual named Defendants, Willie Peak, William Manasco, Noah Johnson and David Hatcher, are sued in their official capacity. When a city official is sued in his official capacity, the suit is simply "another way of pleading an action against the entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985); *Wallace v. City of Montgomery*, 956 F. Supp. 955 (M.D. Ala.1996). "Such suits against municipal officers are therefore, in actuality, suits against the city that the officers represent." *Busby v. City of Orlando*, 931 F. 2nd 764, 776 (11th Cir. 1991). Accordingly, there is no longer a need to bring an official capacity suit against a local government official since local government units can be sued directly for damages and/or injunctive or declaratory relief. *Wallace v. City of Montgomery*, *supra.* In the present case it is undisputed that the City of Montgomery is sued in this case. Consequently, Defendants Peak, Manasco, Hatcher, and Johnson sued in their official capacity should be dismissed.

Furthermore, this action is a Title VII action against the employer of Peak, Manasco, Hatcher,

and Johnson. Relief granted under Title VII may only be had against the employer and not against the individuals whose actions constitute an alleged violation. *Busby v. City of Orlando*, 931 F. 2d 764, 772 (11th Cir. 1991). Relief sought from an employee of the City in his official capacity is essential relief sought against the City. *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law. Official-capacity suits, in contrast, generally represent only another way of pleading an action against an entity of which the officer is an agent. As long as the government entity receives notice and the opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is not a suit against the official personally, for the real party in interest is the entity").

The claims against Peak, Manasco, Hatcher, and Johnson are duplicative of the claims against the City of Montgomery. Therefore the claims against Peak, Manasco, Hatcher, and Johnson in their official capacities should be dismissed.

    B.    *PRIMA FACIE CASE OF DISCRIMINATION*

Title VII prohibits an employer from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex or national origin." 42 U.S.C. §2000(e)-2(a)(1). To establish a prima facie case of race discrimination by disparate treatment, Plaintiff must establish that he is a member of the protected class; that he is engaged in conduct similar to that of persons outside of the protected class; and that similarly situated persons outside the protected class received more favorable treatment. *Smith v. International Paper Co.*, 160 F. Supp. 2d 1335, 1340 (M.D. Ala. 2001).

Claims of disparate treatment pursuant to Title VII must be examined using the analytical

framework established by the United States Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973) and *Texas Dept. of Community Affairs v. Burdin*, 450 U.S. 248 (1981). Under the *McDonnell Douglas* framework, the plaintiff employee must first establish a prima facie case of discrimination, which creates a presumption of discrimination. Once the employee has set forth evidence constituting a prima facie case, the burden then shifts to the employer to "produce evidence that the plaintiff was rejected, or someone else was preferred, for a legitimate, non-discriminatory reason." *Burdin*, 450 U.S. at 254; *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 143 (2000). This burden is one of production, not persuasion. *Id.* It "can involve no credibility assessment." *Reeves v. Sanderson Plumbing, supra at 143; St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 509 (1993). If the employer submits legitimate reasons for its actions, the presumption of discrimination drops from the case and the burden shifts back to the plaintiff employee to discredit the proffered non-discriminatory reasons by showing that they are merely a pretext for unlawful discrimination. *See McDonnell Douglas*, 411 U.S. at 802-05; *Burdin*, 450 U.S. at 252-256.

At the pretext stage, in order to survive summary judgment, the plaintiff must provide sufficient evidence to allow a reasonable fact finder to conclude, at a minimum, that the proffered reasons were not actually the motivation for the employer's decision. *Combs v. Plantation Patterns,* 106 F. 3d 519, 538 (11th Cir. 1997), *cert. den'd*, 522 U.S. 1045 (1998). A plaintiff may do this (1) by showing that the employer's legitimate non-discriminatory reason should not be believed; or (2) by showing that in light of all the evidence a discriminatory reason more likely motivated the decision. *Mayfield v. Patterson Pulp Co.,* 101 F. 3d 1371, 1376 (11th Cir. 1996).

In order to recover under Title VII, plaintiff must prove that he suffered an adverse employment action "because of" his race and that his race played a motivating role in or contributed

to the defendant's decision. *Texas Dept. of Community Affairs v. Burdin,* 450 U.S. 248, 253 (1981).

Finally, as previously stated, the plaintiff bears the burden of establishing pretext [for discrimination], [s]he must present 'significantly probative' evidence on the issue to avoid summary judgment." *Young v. General Foods,* 840 F.2d 825 (11th Cir.1988) (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317). "Conclusory allegations of discrimination, without more, are not sufficient to raise an inference of pretext or intentional discrimination where [a defendant] has offered extensive evidence of legitimate, nondiscriminatory reasons for its actions." *Id.* at 830.

### C.    PLAINTIFF'S CLAIM FOR FAILURE TO PROMOTE

Plaintiff contends that he "… has been adversely affected by discrimination involving promotion, compensation, assignments and other terms and conditions of employment as a result of Defendants failing to remedy systemic employment discrimination" on the basis of national origin or race. To establish a prima facie case of unlawful discrimination, Plaintiff must show that he is a member of a protected class; that he performed his job satisfactorily or was qualified for the new position; and that plaintiff suffered an adverse employment action under circumstances giving rise to an inference of discrimination. *McDonnell Douglas v. Green*, 411 U.S. 792, 802 (1973); *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993).

It is the responsibility of the Montgomery City/County Personnel Board (Personnel Board) to announce open positions, recruit applicants and qualify applicants for employment after the position is closed for the various entities it serves. The Personnel Board is a separate entity from the City of Montgomery and serves as the personnel department for the City of Montgomery (City), the County of Montgomery, the Montgomery Airport Authority and the Montgomery Housing Authority. Appointing authorities, such as the mayor of the City, select employees from a register of qualified

applicants, except for the upgrade of service maintenance workers who are selected pursuant to procedures established through a Consent Order which was approved by the Federal Middle District Court of Alabama. *(DX 2, Affidavit of Barbara Montoya).*

Section 6 (b) of Act 2280, the Alabama statute which established Montgomery's Personnel Board, states:

> *If appointment is to be made from employment or promotional lists, the names of persons willing to accept appointment shall be certified by the Personnel Director in the order in which they appear on the lists. The number of names certified shall exceed by four the number of vacancies to be filled.*

In other words, the appointing authority is entitled to consider five candidates for each vacant position. The City-County of Montgomery Personnel Board Rules and Regulations Rule VII § 6(b) states:

> *When there are five (5) or less applicants who meet the minimum qualifications for an announced promotional examination or an open competitive examination, the Personnel Department's certification shall include all eligible candidates without administration of any selection procedure.*

Applicants are certified to the appointing authorities in accordance with the law which established the Personnel Board. That is, the appointing authority may consider five candidates for each vacancy; a procedure known as the "Rule of Five". Pursuant to law, the appointing authority may choose any one of the top five candidates certified as eligible for employment. It is not necessary for the appointing authority to choose the first person on the list. Otherwise, there would be no selection procedure and the appointing authority would have no discretion in the hiring process to fill vacancies rather all vacancies would be filled based on the first ranked applicant as determined by Personnel. *(DX 2, Affidavit of Barbara Montoya).*

Since 2001, it has been the policy of the current Mayor of the City that all registers are "open

competitive". That means that city employees must compete with outside candidates for any city vacancy and there is no guarantee that a city employee will be in the top five candidates or will be considered or selected to fill a vacant position. Prior to the current Mayor's policy, city department heads could request a promotional register which prevented competition from outside candidates and increased the likelihood that candidates would be placed on the register without the administration of a selection procedure. *(DX 2, Affidavit of Barbara Montoya).*

As set out above, the open competitive register means that there is no guarantee that a city employee will be in the top five candidates or will be considered or selected to fill a vacant position. It is undisputed that Plaintiff was certified as a qualified applicant for the position of Master Auto Mechanic by City-County of Montgomery Personnel. However that does not mean that the promotional procedures were violated because Plaintiff did not get the job. As previously stated, it is not necessary for the appointing authority to choose the first person on the list. Otherwise, there would be no selection procedure and the appointing authority would have no discretion in the hiring process to fill vacancies. *(DX 2, Affidavit of Barbara Montoya).*

Plaintiff and two other applicants were interviewed by William Manasco, Willie Peak and David Hatcher. *(DX 1, Affidavit of William Manasco).* Following the interview process, the committee unanimously selected black male, Solomon Billups, be appointed to the position of Master Auto Mechanic. It was the opinion of the committee that Billups' responses to questions asked of all applicants indicated that he had knowledge and experience in diesel repair and maintenance. The previous performance and work history of Plaintiff was also a consideration. *(DX 1, Affidavit of William Manasco).*

Plaintiff contends that he was made acting master mechanic by Defendants Peak and Johnson

11

in April 2002 which qualified him more for the position. However the retirement of former Master Auto Mechanic, Somboon Boriboon, was not effective until June 5, 2003. *(DX 2, Affidavit of Barbara Montoya).* Additionally, Peak and Johnson, were not in a position to make anyone acting master mechanic. Charles Shaner was still the Solid Waste Superintendent in April 2002. *(DX 2, Affidavit of Barbara Montoya).* However no one at the Landfill had the authority to temporarily appoint Plaintiff acting master mechanic. As previously stated, a temporary appointment requires action by the Mayor for the City and the Personnel Director. *(DX 2, Affidavit of Barbara Montoya).* The position of Master Auto Mechanic was never opened for temporary appointment but rather for an open competitive register in December 2004. *(DX 2, Affidavit of Barbara Montoya).*

Under the Eleventh Circuit's previous standard regarding qualifications evidence, courts allowed a plaintiff to establish pretext only when "the disparity in qualifications is so apparent as to virtually jump off the page and slap you in the face." *Cooper v. Southern Co.,* 390 F.3d 695, 732 (11th Cir.2004); *Cofield v. Goldkist, Inc.,* 267 F.3d 1264, 1268 (11th Cir.2001); *Denney v. City of Albany,* 247 F.3d 1172, 1187 (11th Cir.2001). However, recently, in *Ash v. Tyson Foods, Inc.,* ___ S. Ct. ____, 2006 WL 386343 (Feb. 21, 2006), the Supreme Court held, "[t]he visual image of words jumping off the page to slap you (presumably a court) in the face is unhelpful and imprecise as an elaboration of the standard inferring pretext from superior qualifications."

The Supreme Court also acknowledged, that federal courts, including the Eleventh Circuit Court of Appeals, have recognized other standards such as noting that "disparities in qualifications must be of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question". *Cooper, supra,* at 732; *Raad v. Fairbanks North Star Borough School Dist.,* 323 F.3d 1185, 1194

(C.A.9 2003) (holding that qualifications evidence standing alone may establish pretext where the plaintiff's qualifications are " 'clearly superior' " to those of the selected job applicant); *Aka v. Washington Hospital Center,* 156 F.3d 1284, 1294 (C.A.D.C.1998) (en banc) (concluding the factfinder may infer pretext if "a reasonable employer would have found the plaintiff to be significantly better qualified for the job").

Additionally, the Eleventh Circuit has held that a subjective reason is a legally sufficient, legitimate, non-discriminatory reason under the *McDonnell Douglass/Burdin* analysis if the defendant articulates clear and reasonably specific factual basis upon which it based its subjective opinion. *Chapman v. AI Transport*, 229 F. 3d 1011, 1034 (11th Cir. 2000)(en banc); *Pennington v. City of Huntsville*, 93 F. Supp. 1201, 1217 n.12 (N.D. Ala. 2000).

In applying any of the above standards, there is nothing to be considered as evidence by this Court to show extreme disparity in qualifications or that Plaintiff's qualifications were clearly superior or that Plaintiff was significantly better qualified for the job. The position was filled by a minority, black male Solomon Billups. As set out above, Billups' responses to the questions of the committee indicated that he had more knowledge and experience in diesel repair and maintenance. *(DX 1, Affidavit of William Manasco).* Plaintiff also had been counseled in the past for his excessive time to repair equipment, not handling responsibilities properly and ability to prioritize the work. *(DX 1, Affidavit of William Manasco).*

Even if Plaintiff is deemed to have made a prima facie case of employment discrimination by the failure of the City of Montgomery to promote him to Master Auto Mechanic, Defendants provided legitimate, non-discriminatory reasons for not promoting him. Once the inference of discrimination is raised, the employer may rebut the inference by articulating legitimate, non-

discriminatory reasons for its actions. *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 360 n.46 (1997). Where such reasons are presented they must be sufficient on their face "to rebut" or "dispell" any inference of discrimination that arises from proof of a prima facie case. *Id.* An employer may act on the basis of a "good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason." *Chapman v. AI Transp.*, 229 F. 3d 1012, 1030 (11th Cir. 2000)(en banc). The court will not second-guess an employer's business judgment with respect to failure to promote claims. *Id*. at 1030; *Williams v. Alabama Indus. Deve't Training*, 146 F. Supp. 1214 (M.D. Ala. 2001).

Recent cases which have examined failure to promote claims reveal that even if an employer's reasons for its decision not to promote are not the best of business judgment or may have been based on subjective opinions, they nevertheless will be upheld and the plaintiff's lawsuit dismissed on summary judgment. *Gaddis v. Russell Corp.*, 242 F. Supp. 1123 (M.D. Ala. 2003)(the fact that two white employees hired as senior analysts by defendant had more experience with other companies than plaintiff, even though plaintiff had more education and trained the white employees on computer software and was told by her superior that she was doing a good job, still prevented plaintiff from prevailing in her failure to promote claim); *Miller v. Bed, Bath & Beyond, Inc.*, 185 F. Supp. 2d 1253 (N.D. Ala. 2002); *Pennington v. City of Huntsville*, 93 F. Supp. 1201 (N.D. Ala. 2000).

Moreover, once a defendant employer articulates a legitimate, non-discriminatory reason for not promoting a plaintiff, the plaintiff must establish pretext by showing that the defendant employer's explanation is unworthy of credence. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1983). The employee must demonstrate that the employer's proffered reasons for its actions are

untrue. *Combs v. Plantation Patterns*, 106 F. 3d 1519, 1529 (11th Cir. 1997) *cert. den'd*, 552 U.S. 1045 (1998).

In *Miller v. Bed, Bath & Beyond* the court concluded that the plaintiff failed to rebut the reasons offered by the employer for its promotion decision other than plaintiff's own argument that she was more qualified than those promoted. The court noted that although the plaintiff may believe that an employer's personnel decisions should be based on certain characteristics which the plaintiff possesses, that circumstance cannot show pretext merely by calling into wisdom the employer's view that the factors relied on by the employer are of relatively significant importance compared to other qualities that might have made another reasonable employer promote the plaintiff.

Likewise, the court in *Pennington v. City of Huntsville* stated that once the employer articulated legitimate, non-discriminatory reasons for rejecting the plaintiff as its first choice for a position and placed conditions on his contingent offer of another, less desirable position (including periodic employment reviews and participating in a writing skills program) which conditions were not made a part of the white male's offer, the court found that the plaintiff did not show that the employer's rationale for requiring the plaintiff to have those conditions placed on him demonstrated pretext. As the court recognized, only where the merits of the employer's choice and its proffered reasons are so utterly dubious that no remotely reasonable employer would make the same selection in the absence of illegal considerations would courts begin to question a defendant employer's poor business judgment. *e.g. Combs*, 106 F. 3d at 1543.

As stated earlier, Plaintiff must prove that he suffered an adverse employment action "because of" his race and that his race motivated or contributed to the employer's decision. *Texas Dept. of Community Affairs v. Burdin*, 450 U.S. 248, 253 (1991). Plaintiff has failed to show that he

was denied the promotion due to his race or national origin. The ultimate question is whether the defendant acted with discriminatory intent. *Williams v. Alabama Indus. Development Training*, 146 F. Supp. 2d 1214, 1219 (M.D. Ala. 2001).

Plaintiff states that the only reason left for him to believe he did not get the Master Auto Mechanic position was due to his race or national origin. The Eleventh Circuit in *Young v. General Foods,* 840 F.2d 825 (11th Cir.1988) addressing conclusory allegations of discrimination to establish pretext held:

> "With regard to establishing pretext: A plaintiff, when faced with a motion for summary judgment, ... must respond sufficiently to any rebuttal by the defendant to create a genuine issue of material fact. Even where a prima facie case has been established but the defendant has rebutted with a proffer of legitimate, non-discriminatory reasons for the discharge, a genuine issue of material fact is not automatically presented.... [O]nce established a prima facie case creates a rebuttable presumption of discrimination; but this presumption alone does not create an inference that a material fact, sufficient to present a jury question, is in issue."

Because the plaintiff bears the burden of establishing pretext [for discrimination], [s]he must present 'significantly probative' evidence on the issue to avoid summary judgment." *Young v. General Foods,* 840 F.2d 825 (11th Cir.1988) (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317). "Conclusory allegations of discrimination, without more, are not sufficient to raise an inference of pretext or intentional discrimination where [a defendant] has offered extensive evidence of legitimate, nondiscriminatory reasons for its actions." *Id.* at 830.

Although Plaintiff disagrees with the decision, Plaintiff has not submitted sufficient evidence to raise an inference of pretext. Federal courts do not sit as super-personnel departments that reexamine an entity's business decisions. *Elrod v. Sears & Roebuck Co.,* 939 F. 2d 1466, 1470 (11th

Cir. 1991). No matter how medieval a firm's practice, no matter how high-handed its decision or process, no matter now mistaken the firm's managers, the law does not interfere. *Id*.

## V.

### CONCLUSION

Individual named Defendants, Willie Peak, William Manasco, Noah Johnson and David Hatcher, are sued in their official capacity. When a city official is sued in his official capacity, the suit is simply "another way of pleading an action against the entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985); *Wallace v. City of Montgomery*, 956 F. Supp. 955 (M.D. Ala.1996). In the present case it is undisputed that the City of Montgomery is sued in this case. Consequently, Defendants Peak, Manasco, Hatcher, and Johnson sued in their official capacity should be dismissed

Defendants submit that Plaintiff has failed to present a prima facie case of discrimination. Even if the Plaintiff made out a prima facie case of discrimination, Defendants have demonstrated legitimate, non-discriminatory reasons for its decisions and actions. Plaintiff cannot show the Defendants acted with any discriminatory intent. Plaintiff merely relies on his beliefs to make conclusory allegations. "Conclusory allegations of discrimination, without more, are not sufficient to raise an inference of pretext or intentional discrimination where [a defendant] has offered extensive evidence of legitimate, nondiscriminatory reasons for its actions." *Young v. General Foods,* 840 F.2d 825, 830 (11th Cir.1988) (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317).

This Court should not sit as a super-personnel department. Whether the Court agrees with them or not, the decisions should be upheld by granting summary judgment in favor of Defendants.

Lastly, Plaintiff cannot show that any of the proffered reasons given by Defendants were

17

pretextual in nature. On that basis as well as the others discussed above, Defendants' Motion for Summary Judgment is due to granted.

Respectfully submitted this 23rd day of June, 2006.

/s/ Kimberly O. Fehl
Kimberly O. Fehl (FEH001)
Attorney for Defendants

OF COUNSEL:
City of Montgomery
Legal Division
Post Office Box 1111
Montgomery, AL  36101-1111
334.241.2050
FAX 334.241.2310

## CERTIFICATE OF SERVICE

I hereby certify that I have mailed a copy of the above and foregoing *Memorandum of Law in Support of Defendants' Motion for Summary Judgment* to the following by electronic mail or placing a copy of same in the United States Mail, postage prepaid, this 23rd day of June, 2006:

Honorable Juraldine Battle-Hodge
207 Montgomery Street, Suite 215
Montgomery, Alabama 36104

/s/ Kimberly O. Fehl
Of Counsel