# EXHIBIT "1"

IN UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| SACKDA SERMSAP, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CASE NO. 2:05-cv-1025-F |
| | ) |
| CITY OF MONTGOMERY, et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendants, City of Montgomery, David Hatcher, Noah Johnson, William Manasco and Willie Peak, in support of their Motion for Summary Judgment state unto the Court the following:

### I.

#### SUMMARY JUDGMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, admissions on file, together with the affidavits, if any, which it believes demonstrates the absence of genuine issue of material fact.'" *Id.* at 323. The movant can

meet this burden by presenting evidence showing that there is no dispute of material fact, or by showing, or pointing out to, the district court that the non-moving party has failed to present evidence in support of some element of the case on which it bears the ultimate burden of proof. *Id.* at 322-324.

Once the non-moving party has met its burden, Rule 56(e) "requires the non-moving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324. To avoid summary judgment, the non-moving party "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

After the non-moving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Rule 56(c), FRCP. Similarly, the moving party is entitled to summary judgment if the non-moving party has failed to prove the elements of her case or there is the absence of evidence in the record to support a judgment for the non-moving party on the issue in question. *Fitzpatrick v. City of Atlanta*, 2 F. 3d 1112, 1115-16 (11th Cir. 1993).

Additionally, conclusory allegations cannot interpose genuine issues of material fact into the litigation so as to preclude entry of summary judgment. Fed.Rules Civ.Proc.Rule 56(c), 28 U.S.C.A. Specifically in the case of claims of discrimination, the Eleventh Circuit in *Young v. General Foods*, 840 F.2d 825 (11th Cir.1988) addressing conclusory allegations of discrimination to establish pretext held:

"With regard to establishing pretext: A plaintiff, when

2

> faced with a motion for summary judgment, ... must respond sufficiently to any rebuttal by the defendant to create a genuine issue of material fact. Even where a prima facie case has been established but the defendant has rebutted with a proffer of legitimate, non-discriminatory reasons for the discharge, a genuine issue of material fact is not automatically presented.... [O]nce established a prima facie case creates a rebuttable presumption of discrimination; but this presumption alone does not create an inference that a material fact, sufficient to present a jury question, is in issue."

Because the plaintiff bears the burden of establishing pretext [for discrimination], [s]he must present significantly probative evidence on the issue to avoid summary judgment." *Young v. General Foods*, 840 F.2d 825 (11th Cir.1988) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317). "Conclusory allegations of discrimination, without more, are not sufficient to raise an inference of pretext or intentional discrimination where [a defendant] has offered extensive evidence of legitimate, nondiscriminatory reasons for its actions." *Id.* at 830.

## II.

### PROCEDURAL BACKGROUND

This lawsuit was filed on October 25, 2005 naming as Defendants, City of Montgomery, David Hatcher, Noah Johnson, William Manasco and Willie Peak. (*PL 1, Complaint*). Individual named Defendants, David Hatcher, Noah Johnson, William Manasco and Willie Peak were named by Plaintiff in their official capacities.

Plaintiff alleged in the Original Complaint one count of race discrimination in violation of Title VII of the Civil Rights Act of 1964. (*PL 1, Complaint*). On November 10, 2005, Plaintiff filed Motion for Leave to Amend and Amended Complaint. (*PL 2, Amended Complaint*). Plaintiff alleged in an Amended Complaint one count of discrimination based on national origin in violation Title of

VII of the Civil Rights Act of 1964. (*PL 2, Amended Complaint*). The Court granted Plaintiff's Motion to Amend on November 15, 2005.

Defendants filed an Answer with affirmative defenses to the Complaint on November 21, 2005. (*PL 3, Defendants Answer with Affirmative Defenses*). Defendants filed an Answer with affirmative defenses to the Amended Complaint on November 30, 2005. (*PL 4, Defendants Answer to Amended Complaint with Affirmative Defenses*).

## III.

### NARRATIVE STATEMENT OF FACTS

Sackda Sermsap, an Asian male, is a Construction Equipment Operator II at the Landfill. Noah Johnson, a black male, was appointed as Superintendent of the Landfill in September 2002 (*DX 2, Affidavit of Barbara Montoya*). David Hatcher, a white male, was appointed as the Assistant Superintendent of the Landfill in September 2003. (*DX 2, Affidavit of Barbara Montoya*) William Manasco is a white male and the former City Engineer. The Landfill is a division of Technical Services under the supervision of the City Engineer. (*DX 1, Affidavit of William Manasco*). Willie Peak is a white male and the Mayor's Assistant. Peak was temporarily assigned to supervise the Landfill in the absence of a Solid Waste Superintendent. (*DX 1, Affidavit of Willam Manasco*).

The request to fill the position of Master Auto Mechanic was received by Personnel on October 7, 2004. (*DX 2, Affidavit of Barbara Montoya*). The position was closed for application on December 29, 2004. (*DX 2, Affidavit of Barbara Montoya*). At the time that the position was originally posted, the only name on the eligible register certified as qualified by Personnel was Kenneth Braswell. (*DX 2, Affidavit of Barbara Montoya*). William Manasco, former City Engineer, requested that the position be re-advertised. (*DX 1, Affidavit of William Manasco and DX 2,*

*Affidavit of Barbara Montoya).*

The position was reopened for applications on January 10, 2005 with a closing date of January 31, 2005. *(DX 2, Affidavit of Barbara Montoya).* Personnel received six (6) applications, five (5) were qualified and one (1) unqualified. *(DX 2, Affidavit of Barbara Montoya).*

Plaintiff applied and was qualified for the position along with four other applicants. A total of five qualified candidates were placed on the eligible register. *(DX 2, Affidavit of Barbara Montoya).* The top five candidates were certified to the appointing authority to be considered for appointment to the vacant position. *(DX 2, Affidavit of Barbara Montoya).*

The names on the list were Solomon Billups, Kenneth Braswell, Sackda Sermsap, Johnnie Shaner, Jr. and Warren B. Thomas. Mr. Thomas did not respond to a request to be interviewed and Mr. Braswell declined to be interviewed. *(DX 1, Affidavit of William Manasco).*

The applicants were interviewed by David Hatcher, Bill Manasco and Willie Peak. *(DX 1, Affidavit of William Manasco).* The three applicants were all asked the same nine questions. *(DX 1, Affidavit of William. Manasco).* Following the interview process, the committee unanimously selected black male, Solomon Billups, be appointed to the position of Master Auto Mechanic. This was based on the fact that Billups' responses specifically to question 6 regarding time required to remove and replace a track from a D-8 dozier; question 7 regarding ability to diagnose, take down and repair an engine and question 8 regarding the length of time to tear down and repair a D-8 engine indicated that his knowledge and experience in diesel repair were somewhat better than Mr. Sermsap or Mr. Shaner. Additionally, consideration was given to the performance and work history of Mr. Sermsap and Mr. Shaner. *(DX 1, Affidavit of William Manasco).*

Solomon Billups, a black male, was unanimously recommended to be hired as Master Auto

5

Mechanic. *(DX 1, Affidavit of William Manasco).* Solomon Billups appointment to Master Auto Mechanic was approved by the Mayor on April 12, 2005. *(DX 2, Affidavit of Barbara Montoya).*

Sackda Sermsap filed a charge and an amended charge with the EEOC in May 2005 alleging national origin and race discrimination in May 2005. *(DX 3, EEOC Notice of Charge of Discrimination).* The Dismissal and Notices of Rights was sent by the EEOC on July 29, 2005. *(DX 4, EEOC Dismissal and Notice of Charge of Rights).*

## IV.

### ARGUMENT

**A.   *INDIVIDUAL NAMED DEFENDANTS***

Individual named Defendants, Willie Peak, William Manasco, Noah Johnson and David Hatcher, are sued in their official capacity. When a city official is sued in his official capacity, the suit is simply "another way of pleading an action against the entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985); *Wallace v. City of Montgomery*, 956 F. Supp. 955 (M.D. Ala.1996). "Such suits against municipal officers are therefore, in actuality, suits against the city that the officers represent." *Busby v. City of Orlando*, 931 F. 2nd 764, 776 (11th Cir. 1991). Accordingly, there is no longer a need to bring an official capacity suit against a local government official since local government units can be sued directly for damages and/or injunctive or declaratory relief. *Wallace v. City of Montgomery, supra.* In the present case it is undisputed that the City of Montgomery is sued in this case. Consequently, Defendants Peak, Manasco, Hatcher, and Johnson sued in their official capacity should be dismissed.

Furthermore, this action is a Title VII action against the employer of Peak, Manasco, Hatcher,

and Johnson. Relief granted under Title VII may only be had against the employer and not against the individuals whose actions constitute an alleged violation. *Busby v. City of Orlando*, 931 F. 2d 764, 772 (11th Cir. 1991). Relief sought from an employee of the City in his official capacity is essential relief sought against the City. *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law. Official-capacity suits, in contrast, generally represent only another way of pleading an action against an entity of which the officer is an agent. As long as the government entity receives notice and the opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is not a suit against the official personally, for the real party in interest is the entity").

The claims against Peak, Manasco, Hatcher, and Johnson are duplicative of the claims against the City of Montgomery. Therefore the claims against Peak, Manasco, Hatcher, and Johnson in their official capacities should be dismissed.

### B. *PRIMA FACIE CASE OF DISCRIMINATION*

Title VII prohibits an employer from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex or national origin." 42 U.S.C. §2000(e)-2(a)(1). To establish a prima facie case of race discrimination by disparate treatment, Plaintiff must establish that he is a member of the protected class; that he is engaged in conduct similar to that of persons outside of the protected class; and that similarly situated persons outside the protected class received more favorable treatment. *Smith v. International Paper Co.*, 160 F. Supp. 2d 1335, 1340 (M.D. Ala. 2001).

Claims of disparate treatment pursuant to Title VII must be examined using the analytical

7

framework established by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) and *Texas Dept. of Community Affairs v. Burdin*, 450 U.S. 248 (1981). Under the *McDonnell Douglas* framework, the plaintiff employee must first establish a prima facie case of discrimination, which creates a presumption of discrimination. Once the employee has set forth evidence constituting a prima facie case, the burden then shifts to the employer to "produce evidence that the plaintiff was rejected, or someone else was preferred, for a legitimate, non-discriminatory reason." *Burdin*, 450 U.S. at 254; *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 143 (2000). This burden is one of production, not persuasion. *Id.* It "can involve no credibility assessment." *Reeves v. Sanderson Plumbing, supra at 143; St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993). If the employer submits legitimate reasons for its actions, the presumption of discrimination drops from the case and the burden shifts back to the plaintiff employee to discredit the proffered non-discriminatory reasons by showing that they are merely a pretext for unlawful discrimination. *See McDonnell Douglas*, 411 U.S. at 802-05; *Burdin*, 450 U.S. at 252-256.

At the pretext stage, in order to survive summary judgment, the plaintiff must provide sufficient evidence to allow a reasonable fact finder to conclude, at a minimum, that the proffered reasons were not actually the motivation for the employer's decision. *Combs v. Plantation Patterns*, 106 F. 3d 519, 538 (11th Cir. 1997), *cert. den'd*, 522 U.S. 1045 (1998). A plaintiff may do this (1) by showing that the employer's legitimate non-discriminatory reason should not be believed; or (2) by showing that in light of all the evidence a discriminatory reason more likely motivated the decision. *Mayfield v. Patterson Pulp Co.*, 101 F. 3d 1371, 1376 (11th Cir. 1996).

In order to recover under Title VII, plaintiff must prove that he suffered an adverse employment action "because of" his race and that his race played a motivating role in or contributed

8

to the defendant's decision. *Texas Dept. of Community Affairs v. Burdin,* 450 U.S. 248, 253 (1981).

Finally, as previously stated, the plaintiff bears the burden of establishing pretext [for discrimination], [s]he must present significantly probative evidence on the issue to avoid summary judgment." *Young v. General Foods,* 840 F.2d 825 (11th Cir.1988) (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317). "Conclusory allegations of discrimination, without more, are not sufficient to raise an inference of pretext or intentional discrimination where [a defendant] has offered extensive evidence of legitimate, nondiscriminatory reasons for its actions." *Id.* at 830.

### C. PLAINTIFF'S CLAIM FOR FAILURE TO PROMOTE

Plaintiff contends that he "... has been adversely affected by discrimination involving promotion, compensation, assignments and other terms and conditions of employment as a result of Defendants failing to remedy systemic employment discrimination" on the basis of national origin or race. To establish a prima facie case of unlawful discrimination, Plaintiff must show that he is a member of a protected class; that he performed his job satisfactorily or was qualified for the new position; and that plaintiff suffered an adverse employment action under circumstances giving rise to an inference of discrimination. *McDonnell Douglas v. Green,* 411 U.S. 792, 802 (1973); *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 506 (1993).

It is the responsibility of the Montgomery City/County Personnel Board (Personnel Board) to announce open positions, recruit applicants and qualify applicants for employment after the position is closed for the various entities it serves. The Personnel Board is a separate entity from the City of Montgomery and serves as the personnel department for the City of Montgomery (City), the County of Montgomery, the Montgomery Airport Authority and the Montgomery Housing Authority. Appointing authorities, such as the mayor of the City, select employees from a register of qualified

9

applicants, except for the upgrade of service maintenance workers who are selected pursuant to procedures established through a Consent Order which was approved by the Federal Middle District Court of Alabama. *(DX 2, Affidavit of Barbara Montoya).*

Section 6 (b) of Act 2280, the Alabama statute which established Montgomery's Personnel Board, states:

> *If appointment is to be made from employment or promotional lists, the names of persons willing to accept appointment shall be certified by the Personnel Director in the order in which they appear on the lists. The number of names certified shall exceed by four the number of vacancies to be filled.*

In other words, the appointing authority is entitled to consider five candidates for each vacant position. The City-County of Montgomery Personnel Board Rules and Regulations Rule VII § 6(b) states:

> *When there are five (5) or less applicants who meet the minimum qualifications for an announced promotional examination or an open competitive examination, the Personnel Department's certification shall include all eligible candidates without administration of any selection procedure.*

Applicants are certified to the appointing authorities in accordance with the law which established the Personnel Board. That is, the appointing authority may consider five candidates for each vacancy; a procedure known as the "Rule of Five". Pursuant to law, the appointing authority may choose any one of the top five candidates certified as eligible for employment. It is not necessary for the appointing authority to choose the first person on the list. Otherwise, there would be no selection procedure and the appointing authority would have no discretion in the hiring process to fill vacancies rather all vacancies would be filled based on the first ranked applicant as determined by Personnel. *(DX 2, Affidavit of Barbara Montoya).*

Since 2001, it has been the policy of the current Mayor of the City that all registers are "open

10

competitive". That means that city employees must compete with outside candidates for any city vacancy and there is no guarantee that a city employee will be in the top five candidates or will be considered or selected to fill a vacant position. Prior to the current Mayor's policy, city department heads could request a promotional register which prevented competition from outside candidates and increased the likelihood that candidates would be placed on the register without the administration of a selection procedure. *(DX 2, Affidavit of Barbara Montoya).*

As set out above, the open competitive register means that there is no guarantee that a city employee will be in the top five candidates or will be considered or selected to fill a vacant position. It is undisputed that Plaintiff was certified as a qualified applicant for the position of Master Auto Mechanic by City-County of Montgomery Personnel. However that does not mean that the promotional procedures were violated because Plaintiff did not get the job. As previously stated, it is not necessary for the appointing authority to choose the first person on the list. Otherwise, there would be no selection procedure and the appointing authority would have no discretion in the hiring process to fill vacancies. *(DX 2, Affidavit of Barbara Montoya).*

Plaintiff and two other applicants were interviewed by William Manasco, Willie Peak and David Hatcher. *(DX 1, Affidavit of William Manasco).* Following the interview process, the committee unanimously selected black male, Solomon Billups, be appointed to the position of Master Auto Mechanic. It was the opinion of the committee that Billups' responses to questions asked of all applicants indicated that he had knowledge and experience in diesel repair and maintenance. The previous performance and work history of Plaintiff was also a consideration. *(DX 1, Affidavit of William Manasco).*

Plaintiff contends that he was made acting master mechanic by Defendants Peak and Johnson

11